J-S15044-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF J.T.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.M. | : | No. 1798 WDA 2018 |

Appeal from the Order Entered November 19, 2018
In the Court of Common Pleas of Cambria County
Orphans' Court at No(s): 2017-716 IVT

BEFORE:   GANTMAN, P.J.E., SHOGAN, J., and COLINS*, J.

MEMORANDUM BY GANTMAN, P.J.E.:                    **FILED APRIL 26, 2019**

Appellant, S.M. ("Mother"), appeals from the order entered in the Cambria County Court of Common Pleas, which granted the petition of Appellees, S.P. and D.P., Jr., for involuntary termination of Mother's parental rights as to her minor child, J.T.S. ("Child").[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  In August 2016, Mother was incarcerated in SCI when she gave birth to Child.  Child was addicted to methadone at birth and spent three weeks detoxing in the NICU.  Mother gave Father custody of Child while Mother was in prison and, following Child's detox, Father took Child home to live with Father and Child's paternal grandmother.  On September 23, 2016, when Child was five

---

[1] J.S. ("Father") is not a party to this appeal as he is now deceased.

---

*   Retired Senior Judge assigned to the Superior Court.

weeks old, Child's paternal grandfather asked Appellees (Child's paternal second cousin and her husband) to watch Child for "a while." Child has remained with Appellees ever since. During this time, Mother remained incarcerated.

On May 5, 2017, Appellees filed a complaint for custody of Child and a petition for special relief. As a result, Appellees acquired sole legal and physical custody of Child per the order issued July 11, 2017, which provided that Mother could not have contact with Child except by written request and after a full hearing before the court. On August 8, 2017, Appellees filed a petition for involuntary termination of Mother's parental rights to Child. The court appointed independent counsel for Mother and counsel for Child. Following Mother's release from prison on February 24, 2018, the court held two hearings on the termination petition, on March 8, 2018, and November 9, 2018.[2]

_____

[2] Throughout the termination proceedings, the same attorney-guardian *ad litem* ("GAL") represented Child's interests. Because Child was less than three years old at the time of the termination proceedings, we can presume, absent any evidence in the record to the contrary, that there was no conflict between Child's best interests and his legal interests. *See In Re: T.S.*, ___ Pa. ___, 192 A.3d 1080 (2018) , *cert. denied*, ___ U.S. ___, ___ S.Ct. ___, 2019 WL 659981 (Feb. 19, 2019) (holding appointment of second counsel for child, in contested termination proceedings, is not required to represent separate legal interests of child, where child's legal interests and best interests do not diverge; due to child's young age (less than three years old), presumption exists that child was too young to express subjective preferred outcome of termination proceedings; therefore attorney-GAL could fulfill statutory mandate for appointment of counsel and represent both best interests and legal interests of child).

During the March 2018 termination hearing, Appellee S.P. testified that Mother did not contact Appellees concerning Child until after Appellees filed the custody complaint. S.P. explained that Mother sent only one letter to Appellees during the entire time they had Child, but Appellees did not respond to that letter. S.P. also stated that following the July 11, 2017 order, Mother made no written request to contact Child. S.P. stated Appellees hoped to adopt Child if the court granted their petition to terminate Mother's parental rights. On cross-examination by Child's attorney-GAL, S.P. discussed Appellees' relationship with Child and how Child views Appellees as his parents. (*See* N.T. Termination Hearing, 3/8/18, at 4-28). Appellee D.P., Jr. testified similarly. (*Id.* at 29-33).

Mother also testified on her own behalf at the March termination hearing. Mother explained that while there were no formal custody agreements in effect, all three of her other children lived with their fathers. Mother, however, stated that she kept in contact with these children while she was in prison through letters and phone calls. Mother explained she could not communicate with Appellees concerning Child until after she obtained their address through the custody complaint. Testimony also revealed, however, that following the July 11, 2017 order, Mother made no requests for contact with Child.

Mother further testified regarding her extensive history of mental health issues, incarceration, drug use, and failed rehabilitation attempts. Mother

admitted being incarcerated during thirty out of the thirty-six months preceding February 24, 2018. Mother also confessed that during the six months Mother was not incarcerated, she used illegal drugs. Mother further testified that since her release from prison, she had remained clean and was living with her father while applying for jobs. Finally, Mother stated that if the court denied Appellees' petition, she hoped to seek custody time with Child and was willing to have monitored supervision and random drug tests if necessary. (*Id.* at 33-95).

At the November 2018 termination hearing, Appellees' counsel introduced additional evidence that Mother had used illegal drugs, in violation of the terms of her parole, and had been resentenced on November 6, 2018, to three (3) to six (6) months in county prison. (*See* N.T. Termination Hearing, 11/9/18, at 2-4). On November 19, 2018, the court terminated Mother's parental rights to Child under 23 Pa.C.S.A. § 2511(a)(1)-(2) and (b), and allowed for adoption of Child by Appellees without further notice to or consent of Mother. Mother timely filed a notice of appeal on December 17, 2018, as well as a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925.

Mother raises the following issue for our review:

> WHETHER THE COURT EITHER ABUSED ITS DISCRETION OR COMMITTED AN ERROR OF LAW WHEN IT GRANTED THE PETITION FOR INVOLUNTARY TERMINATION OF PARENTAL RIGHTS, THEREBY TERMINATING THE PARENTAL RIGHTS OF S.M. [MOTHER] TO J.T.S. [CHILD]?

(Mother's Brief at 2).

Mother challenges the termination of her parental rights under Sections 2511(a)(1) and (2). Under Section 2511(a)(1), Mother argues she did not show a settled purpose of relinquishing her parental claim, as she attempted to defend Appellees' custody action during the six months prior to the filing of the termination petition. Mother contends she also made an effort to communicate with Appellees regarding Child when she sent a letter, which Appellees ignored, less than two months before the filing of the termination petition and within a month of learning Appellees' address. While Mother stipulates she failed to perform her parental duties in the past, she asserts that her failure is excused due to her incarceration and the barriers Appellees erected, such as the July 11, 2017 custody order, which forbade Mother from contacting Child unless she filed a written request and the court held a full hearing.

Similarly, under Section 2511(a)(2), Mother maintains Appellees failed to present any proof of Mother's refusal to parent Child. Mother again alleges Appellees prevented Mother from parenting Child by ignoring her efforts to communicate with Child and by seeking an onerous custody order. Additionally, Mother emphasizes that, despite her past drug use, she should be given the opportunity to parent Child and is willing to accept any supervision the court finds suitable. Mother stresses Appellees lacked evidence to show that Mother's prior criminal and drug issues were not already

addressed or could not be addressed. Mother claims her parole violation, which resulted in a new sentence of three to six months, was not for drug use, but for leaving rehab one day early. Mother concludes the court erred in terminating her parental rights to Child. We disagree.

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

**In re Z.P.**, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting **In re I.J.**, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> **In re B.L.W.**, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*)*, appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> **In re Adoption of A.C.H.**, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony

that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. ***In re J.D.W.M.***, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. ***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. ***In re R.L.T.M.***, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

***In re Z.P., supra*** at 1115-16 (quoting ***In re Adoption of K.J.***, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

Section 2512 governs who may bring a petition to terminate parental rights, and what the petition must contain, as follows:

### § 2512. Petition for involuntary termination

**(a) Who may file.**—A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by any of the following:

(1) Either parent when termination is sought with respect to the other parent.

(2) An agency.

(3) The individual having custody or standing in *loco parentis* to the child and who has filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt).

(4) An attorney representing a child or a guardian ad litem representing a child who has been adjudicated dependent under 42 Pa.C.S.A § 6341(c) (relating to adjudication).

**(b) Contents.**—The petition shall set forth specifically

those grounds and facts alleged as the basis for terminating parental rights. The petition filed under this section shall also contain an averment that the petitioner will assume custody of the child until such time as the child is adopted. If the petitioner is an agency it shall not be required to aver that an adoption is presently contemplated nor that a person with a present intention to adopt exists.

\* \* \*

23 Pa.C.S.A. § 2512. If the petitioner is not an agency, then the petition must include "an averment that an adoption is presently contemplated or that a person with a present intention to adopt exists." *In re Adoption of J.F.D.*, 782 A.2d 564, 567 (Pa.Super. 2001). In any event, the burden of proof remains with the petitioning party, who must establish valid grounds for termination by clear and convincing evidence. *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa.Super. 2003).

Appellees sought termination of Mother's parental rights on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the

conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b)  Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1)-(2), (b).  "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions."  ***In re Z.P., supra*** at 1117.

Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of…her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled

- 9 -

intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for…her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of…her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include

- 10 -

acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

With respect to an incarcerated parent, this Court has stated:

> [I]ncarceration alone does not provide sufficient grounds for the termination of parental rights. Likewise, a parent's incarceration does not preclude termination of parental rights if the incarcerated parent fails to utilize given resources and fails to take affirmative steps to support a parent-child relationship. As such, a parent's responsibilities are not tolled during incarceration.

*In re Adoption of K.J., supra* at 1133 (internal citations omitted).

Under Section 2511(b), the court must consider whether the child's needs and welfare will be met by termination. *In re C.P.*, 901 A.2d 516 (Pa.Super. 2006).

> Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the

> child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond.

*Id.* at 520 (internal citation omitted). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P., supra* at 1121.

The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state may properly be considered unfit and have her parental rights terminated. *In re B.L.L.*, 787 A.2d 1007 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of…her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B.,N.M., supra* (internal citations and quotation marks omitted). "[A] parent's basic constitutional right to the custody and rearing of…her child is converted, upon the failure to fulfill…her parental duties, to the child's right to have proper parenting and fulfillment of his…potential in a permanent, healthy, safe environment." *Id.* at 856.

Instantly, the record supports the court's decision to terminate Mother's parental rights under Section 2511(a). Mother's repeated drug use, incarceration, and failed attempts at rehabilitation have characterized her life for the past several years. Mother gave birth to Child while in prison in August 2016. Child was born addicted to methadone and spent three weeks in the NICU detoxing. Following his detox, Child left the hospital with Father, only to end up in Appellees' care two weeks later. Mother, however, remained incarcerated until February 24, 2018. During the March termination hearing, Mother admitted being incarcerated for thirty of the thirty-six months preceding her February 2018 release and, for the six months she was not incarcerated, Mother confessed to using illegal drugs. Mother also failed to

complete several drug rehabilitation programs. Finally, just a few months after Mother's February 2018 release, she violated the terms of her parole and was resentenced to an additional three to six months' imprisonment.

During Mother's incarceration, she made minimal effort to communicate with Child. Prior to Appellees' custody complaint, Mother had no contact with Appellees. Mother failed to use her family and friends to find Appellees' address and phone number after Mother was given Appellees' names. Though Mother claimed she could not obtain Appellees' address, even after doing so, Mother sent them only one letter. Additionally, after entry of the July 11, 2017 court order, Mother made no written request to contact Child. Though Mother's incarceration does not, in itself, provide grounds for involuntary termination of her parental rights, her parental responsibilities continued during that time. **See In re Adoption of K.J., supra**. Mother failed to show she utilized all available resources to foster a meaningful relationship with Child. **See B., N.M., supra**.

Moreover, the record supports the court's decision to terminate Mother's parental rights under Section 2511(b). Mother has been incarcerated for the vast majority of Child's life. Having spent only two hours with Child on the day of his birth, Mother has no parental bond with Child. In contrast, Appellees have raised Child since he was five weeks old. During the March termination hearing, Appellees discussed their relationship with Child and how Child views them as his parents. Appellees spoke of how they feed and bathe

Child, read to him, and put him to sleep. Appellees also discussed Child's favorite colors, books, and television programs. Appellees have been the only parents Child has ever known. Terminating Mother's parental rights would not sever any bond. Allowing Appellees to adopt Child is in Child's best interest. Because competent evidence of record supports the court's decision to terminate Mother's parental rights, we have no reason to disturb it. ***See In re B.L.W., supra***. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/26/2019</u>